UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATINA MCDADE,

                Plaintiff,

      v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. C17-335-RSM

**ORDER ON SOCIAL SECURITY DISABILITY**

## I. INTRODUCTION

Katina McDade seeks review of the denial of her application for Supplemental Security Income (SSI). Ms. McDade contends the administrative law judge (ALJ) erred in evaluating: (1) the medical opinion evidence; (2) her own symptom testimony; and (3) the lay witness evidence. Dkt. 9 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

On September 30, 2013, Ms. McDade applied for benefits, alleging disability as of January 1, 2011. Tr. 22, 165-70. Ms. McDade's application was denied initially and on reconsideration. Tr. 22, 65-109. The ALJ conducted a hearing on April 15, 2015, at which time,

ORDER ON SOCIAL SECURITY
DISABILITY - 1

based on the ALJ's inquiry, Ms. McDade amended the alleged onset date to the application filing date of September 30, 2013. Tr. 26, 63. On June 22, 2015, the ALJ issued a decision finding Ms. McDade not disabled. Tr. 22-33.

### III. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. McDade has not engaged in substantial gainful activity since September 30, 2013, the amended alleged onset date and application date.

**Step two:** Ms. McDade has the following severe impairments: status post lymphoma, degenerative disc disease, asthma, fibromyalgia, migraine, obesity, depressive disorder, and substance abuse.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC):** Ms. McDade can perform light work with additional limitations. She can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. She retains the mental capability to adequately perform the mental activities generally required by competitive, remunerative work: she can perform simple, routine tasks and follow short, simple instructions, do work that needs little or no judgment, perform simple duties that can be learned on the job in a short period of less than thirty days, respond appropriately to supervision and coworkers, and deal with occasional changes in the work environment. She has no difficulty dealing with the public.

**Step four:** Ms. McDade cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. McDade can perform, including office helper, electronics accessory assembler, and housekeeper, she is not disabled.

Tr. 22-33. The Appeals Council denied Ms. McDade's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-9.[3]

### IV. DISCUSSION

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

The Court may reverse an ALJ's decision only if it is not supported by substantial evidence or if the ALJ applied the wrong legal standard. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Even then, the Court will reverse the ALJ's decision only if the claimant demonstrates that the ALJ's error was harmful. *Id.*

**A.      Medical Evidence**

The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* Generally, the opinions of treating doctors are entitled to greater weight than the opinions of examining doctors and the opinions of examining doctors are entitled to greater weight than the opinions of non-examining doctors. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

**1.      John Yuen, M.D.**

Dr. Yuen, Ms. McDade's treating doctor, submitted a medical source statement in March 2015. Tr. 1162-67. Dr. Yuen opined that Ms. McDade: could lift and carry up to only 10 pounds occasionally; could sit for 1 hour, stand for 30 minutes and walk for 30 minutes at one time without interruption; could sit for 2 hours, stand for 1 hour and walk for 1 hour total in an 8 hour workday; could reach, handle, finger, feel, push and pull occasionally; occasionally operate foot controls; occasionally climb stairs and ramps, balance, stoop, kneel, crouch but never climb ladders and scaffolds or crawl; could occasionally drive; should never be exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme heat or cold, or vibrations; and should be limited to a quiet environment. *Id.* The ALJ offered several reasons for discounting Dr. Yuen's opinion including that it was

submitted in check-box form and failed to provide findings to support the extreme limitations offered on the form. Tr. 30.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Ms. McDade acknowledges that many of the treatment notes do not address functional limitations and thus are generally of little use in measuring the accuracy of Dr. Yuen's opinion or Ms. McDade's functional capacity. Dkt. 9 at 7. Ms. McDade points to a couple of treatment notes in the record which she argues might offer some support Dr. Yuen's opinion. For instance, Ms. McDade notes that she was diagnosed with fibromyalgia on several occasions and points to a couple of treatment notes from other providers in the record indicating that her strength was limited by pain and that her pain levels made it difficult to determine the cause of her low back pain. Dkt. 9 at 8 (citing Tr. 325, 481, 515, 680, 688). However, the fact that Ms. McDade was diagnosed with fibromyalgia does not, in and of itself, undermine the ALJ's reason for rejecting Dr. Yuen's opinion. The ALJ accepted the diagnosis of fibromyalgia and included it as a severe impairment. Moreover, Dr. Yuen did not cite to any of the treatment notes highlighted by Ms. McDade or to any other findings as the basis for the significant limitations assessed in his opinion. In fact, despite the direction in the medical source statement form that Dr. Yuen "[i]dentify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history and symptoms including pain etc.) which support your assessment or any limitations and why the findings support the assessment[]", he offers no explanation whatsoever as to the basis for his opinions. Tr. 1162-67.

While Ms. McDade attempts to offer her own interpretation of the evidence by citing to

treatment notes from other providers which might provide some support for Dr. Yuen's opined limitations, the Court cannot say the ALJ was unreasonable in discounting Dr. Yuen's opinion as brief, conclusory and inadequately supported by clinical findings. *See Molina*, 674 F.3d at 1111 ("[W]e must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Accordingly, the ALJ did not err in discounting Dr. Yuen's opinion.

### 2. Sonal Patel, M.D.

Dr. Patel, Ms. McDade's treating doctor, completed a Department of Social and Health Services (DSHS) physical evaluation form in August 2013. Tr. 410-12. Dr. Patel found Ms. McDade "severely limited" meaning she was "unable to meet the demands of sedentary work." Tr. 412. Dr. Patel found that fibromyalgia, paresthesias, Hodgkin lymphoma, nodular sclerosis, interstitial lung disease and back pain all caused marked to severe limitations in Ms. McDade's ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop and crouch. Tr. 411.

The ALJ discounts Dr. Patel's opinion on the grounds that she fails to explain the limitation that Ms. McDade is "severely limited" and unable to meet the demands of sedentary work, fails to provide any function-by-function limitations, and fails to provide findings supporting the extreme limitations offered. Tr. 30. The record does not support these reasons for discounting Dr. Patel's opinion. First, contrary to the ALJ's finding, Dr. Patel does assess function-by-function limitations supporting the conclusion that Ms. McDade is unable to meet the demands of sedentary work. Specifically, Dr. Patel opines that Ms. McDade's fibromyalgia, paresthesias, Hodgkin lymphoma, nodular sclerosis, interstitial lung disease and back pain all cause marked to severe limitations in her ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop and crouch. Tr. 411. As such, this was not a valid reason to discount Dr. Patel's opinion that Ms. McDade is unable to meet the demands of sedentary work. The Court also

notes that the ALJ fails to address Dr. Patel's opinions as to these specific functional limitations entirely and fails to include them in the RFC or the hypothetical to the vocational expert (VE). This, in and of itself, constitutes harmful error. *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."); *Molina*, 674 F.3d at1115 (an error is harmless where it is "'inconsequential to the ultimate nondisability determination'" (quoting *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))).

Second, again, contrary to the ALJ's finding, Dr. Patel does provide clinical findings which tend to support the limitations offered. Specifically, Dr. Patel noted significant reductions on range of motion testing in Ms. McDade's back, neck, hips, knees, shoulders, ankles, wrists, and thumbs, and noted he even deferred testing backward extension of the hips due to pain. Tr. 413-14. The ALJ fails to mention these findings at all in addressing Dr. Patel's opinions and, while Dr. Patel might have provided a more detailed explanation for her opinions, substantial evidence does not support the ALJ's conclusion that she failed to provide any findings supporting the limitations opined.

The ALJ also discounts Dr. Patel's opinion on the grounds that it was completed prior to the amended alleged onset date. Tr. 30. This was also not a sufficient reason on its own to discount Dr. Patel's opinion. The ALJ is required to address all relevant evidence in determining a claimant's capacity to work. *See* 20 C.F.R. 416.945(a). It is true that often "medical opinions that predate the alleged onset of disability are of limited relevance" particularly where "disability is allegedly caused by a discrete event." *Carmickle*, 533 F.3d at 1165. However, in this case, Ms. McDade did not allege a discrete disabling event but ongoing physical impairments diagnosed prior to the amended alleged onset date including fibromyalgia, depression and status

post-lymphoma.  Ms. McDade initially filed for SSI on September 30, 2013, alleging a disability onset date of January 1, 2011.  The onset date was amended at the hearing, in response to the ALJ's inquiry, to match the SSI application date of September 30, 2013.  Tr. 63.  Dr. Patel's opinion was rendered in August 2013, after the original alleged onset date and merely a month prior to the amended alleged onset date.  There does not appear to be any evidence that Ms. McDade's level of impairment drastically changed or improved during the month between Dr. Patel's assessment and the amended alleged onset date.  Thus, the Court finds Dr. Patel's assessment was relevant and probative evidence and the ALJ could not discount the opinion solely because it was rendered one month prior to the amended alleged onset date.  *See Thompson v. Berryhill*, No. 2017 WL 4296971 at *3 (W.D. Wash. Sept. 28, 2017) (Noting that "[v]irtually all disability claims substantially rely on evidence predating the date the disability application is filed.  This is because a claimant needs evidence of disability to apply for benefits, and that evidence necessarily involves records, statements, and opinions that predate the application.").

In sum, the ALJ harmfully erred in evaluating Dr. Patel's opinion which includes more significant limitations than are included in the RFC.  On remand, the ALJ should re-evaluate the opinion in its entirety.

### 3. Non-Examining Sources

Ms. McDade contends the ALJ erred in giving great weight to the opinions of non-examining doctors Robert Handler, M.D. and Thomas Clifford, Ph.D.  Dkt. 9 at 4-6.  As previously noted, the opinions of treating and examining doctors are generally entitled to greater weight than the opinions of non-examining doctors.  *See Garrison*, 759 F.3d at 1012.  Because the Court finds the ALJ harmfully erred in evaluating Dr. Patel's treating opinion, in reevaluating

that opinion on remand the ALJ should also reevaluate and re-weigh the non-examining opinions of Dr. Handler and Dr. Clifford.

**B.     Ms. McDade's Testimony**

The ALJ discounts Ms. McDade's testimony as "out of proportion with the medical evidence." Tr. 28.  Specifically, he states that Ms. McDade "did not provide convincing details regarding factors that precipitated or aggravated the allegedly disabling symptoms, claiming that the symptoms are present 'constantly' or all of the time" and that she has "constant aches and pain 'all over' her body." *Id.*  However, it is unclear how the failure to cite to precipitating or aggravating factors undermines Ms. McDade's testimony that she experiences chronic diffuse pain.  Moreover, the ALJ accepts fibromyalgia as a medically determinable severe impairment and Ms. McDade's testimony appears largely consistent with the common symptoms of that impairment.  *See Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004) (Common symptoms of fibromyalgia include "chronic diffuse pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance.").  The ALJ also states that "[t]he mere fact that working may cause pain or discomfort does not mandate a finding of disability." Tr. 28.  However, while this statement may be generally true, it is unclear how it undermines Ms. McDade's testimony in this case that her pain from fibromyalgia, the residual symptoms from her lymphoma/lymphoma treatment (including nausea and paresthesia), as well as her frequent migraines, prevent her from working.

The ALJ next states that the record reveals that treatment and medications were generally effective in controlling Ms. McDade's symptoms.  Tr. 28.  Specifically, the ALJ points to a treatment note from October 2013 indicating Ms. McDade's "symptoms from her fibromyalgia are better and she is seeing Dr. Yuen and is on tramadol and Lyrica." Tr. 1100.  The ALJ also

ORDER ON SOCIAL SECURITY
DISABILITY - 8

points to a treatment note from May 2014 which indicates "[s]he certainly looks better than she did before the Lithium was started. She reports she is having more good days and the 'dark days' are not as bad." Tr. 1271. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, while these two treatment notes reflect that Ms. McDade had some improvement with medication, they do not show that Ms. McDade's impairments are effectively controlled with medication.

While the first treatment note describes Ms. McDade's symptoms as "better" and the second that she "looks better" and reports "more good days", neither of the treatment notes explain what these terms mean in terms of her overall functioning. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). The treatment notes offer no explanation as to how or whether this improvement was drastic or minimal, whether it increased Ms. McDade's functional capacity to any extent, or whether the improvement was sustained such that her impairments could be considered "controlled effectively." *Warre*, 439 F.3d at 1006; *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."). Moreover, the Social Security Administration Rulings (SSRs) recognize that the longitudinal record is particularly important in fibromyalgia cases "because the

ORDER ON SOCIAL SECURITY
DISABILITY - 9

symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *6. Here, the subsequent treatment records do not appear to reflect continued improvement of symptoms but, rather, generally reflect ongoing complaints of pain, stiffness and fatigue. Accordingly, substantial evidence does not support this reason for discounting Ms. McDade's testimony.

The ALJ also notes that "despite her complaints, the physical examination was within normal limits other than reported tenderness in the hands, shoulders and knees and 8/18 fibromyalgia tender points." Tr. 28. However, to the extent the ALJ intends to rely upon this finding, it does not, in fact, undermine Ms. McDade's pain testimony and reflects a misunderstanding of the nature of fibromyalgia. "Fibromyalgia is a disease notable for its lack of usual outward signs." *Neisinger v. Colvin*, No. 2016 WL 2866260, at *4 (W.D. Wash. May 17, 2016). As the Ninth Circuit has held, an ALJ errs in "effectively requiring 'objective' evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 590 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (9th Cir. 2003)).

The ALJ also notes that Ms. McDade completed chemotherapy for her lymphoma and that the cancer "completely resolved" in February 2013. Tr. 28. However, Ms. McDade does not dispute this in her testimony or claim she still has cancer. Rather, she claims that she has ongoing symptoms, including paresthesia and nausea as a result of her lymphoma/lymphoma treatment. Thus, this evidence does not undermine Ms. McDade's testimony. The ALJ also finds that psychiatric examinations since the amended alleged onset date have been within normal limits. Tr. 28 (citing 1059, 1063, 1073, 1080, 1097, 1099-1100, 1171-1283). However, the record does not support this finding. The majority of the "psychiatric examinations" the ALJ points to are merely cursory observations made by providers during the course of appointments

intended to address Ms. McDade's physical impairments and symptoms rather than her mental health symptoms. Furthermore, contrary to the ALJ's finding, psychiatric assessments by Ms. McDade's mental health counselor since the amended alleged onset date regularly indicate that Ms. McDade presented with dysthymic or depressed mood and restricted affect and frequently as tearful or irritable or fluctuating between the two. *See generally* Tr. 1176-1258. The ALJ also accepted depression as a medically determinable impairment that has more than a minimal impact on Ms. McDade's ability to function. Ms. McDade's testimony and statements focus primarily on her limitations caused by pain from fibromyalgia, migraine headaches, and symptoms from lymphoma/lymphoma treatment. While Ms. McDade does state that she has struggled with depression which causes strain she states she has been "dealing with it" and "working on it" in therapy. Tr. 52. Ms. McDade does not appear to allege that her depression is so severe or enduring that, in and of itself, it is debilitating. Accordingly, substantial evidence does not support the ALJ's finding that Ms. McDade's testimony regarding her mental health is inconsistent with the medical record.

      The ALJ also discounts Ms. McDade's testimony as inconsistent with her daily activities. Tr. 28-29. Specifically, the ALJ cites to Ms. McDade's ability to perform her own personal care and basic activities of daily living, cook/prepare meals, do light household cleaning, do laundry, go shopping, and manage her finances, watch movies/television, socialized with her daughter and cousin, walk in the pool for exercise, and attend AA meetings 4-5 times a week including chairing the meetings and unlocking the church doors once per week. *Id.* However, the ALJ fails to identify what aspects of Ms. McDade's testimony conflict with these rather basic activities. Thus, the ALJ's findings were not sufficiently specific or clear to discount Ms. McDade's testimony. *Lester,* 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ

must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Moreover, the fact that Ms. McDade was able to perform some limited basic activities does not undermine her testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)).

Furthermore, the activities the ALJ identifies were performed for short periods of time and Ms. McDade testified she was more limited in many of these activities than the ALJ acknowledges. In fact, Ms. McDade indicated that as her symptoms had worsened she was unable to perform many of the activities cited by the ALJ at all anymore. *See* SSR 12-2p, 2012 WL 3104869, at *6 (the longitudinal record is important in fibromyalgia cases because the symptoms of fibromyalgia can wax and wane). For instance, Ms. McDade testified at the 2015 hearing that she was no longer able to act as chair at the AA meetings and was only able to attend 1-2 times per week, that she could no longer cook because she could not stand for significant periods of time, and her daughter had to help her around the house. Tr. 48-49. Finally, none of these rather limited, primarily in-home activities, cited by the ALJ establish that Ms. McDade could perform basic work activities on a regular and continuing basis in a work setting. There is no evidence Ms. McDade spent a substantial part of her day performing any of these activities or that the level at which she performed them is transferable to the work setting. *Cf. Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (Daily activities may also be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in

pursuits involving the performance of physical functions that are transferable to a work setting.").

The ALJ also noted that Ms. McDade had a history of substance abuse including two DUIs and mandatory substance abuse treatment. Tr. 29. However, there is no evidence that Ms. McDade was abusing alcohol or other substances during the period in question or that she made inconsistent statements regarding her substance abuse, nor does the ALJ make such findings. *Cf. Thomas*, 278 F.3d at 959 (upholding a credibility determination where the claimant "present[ed] conflicting information about her drug and alcohol use"). The ALJ fails to explain how the evidence of past substance abuse undermines Ms. McDade's testimony. Accordingly, on its own, this was not a clear and convincing reason to discount Ms. McDade's testimony. *See, e.g., Woodsum v. Astrue*, 711 F.Supp.2d 1239, 1262 (W.D. Wash. May 7, 2010) ("[D]iscounting plaintiff's credibility because of her substance abuse and legal history was improper, given that it bears little relevance to the plaintiff's tendency to tell the truth.").

The ALJ also discounts Ms. McDade's testimony based on her "poor work history." Tr. 29. While there may be situations where an "extremely poor work history" and demonstrated "little propensity to work" in one's lifetime could negatively affect one's credibility regarding the inability to work, substantial evidence does not support this as a basis to discount Ms. McDade's testimony in this case. *Thomas*, 278 F.3d 947. While Ms. McDade had low earnings between 1990 and 1998 (between the ages of 17 and 25), she had significant earnings from 1999 to 2003. Furthermore, Ms. McDade explained that she was terminated from her job in 2003 due to a change in management and conflict over mileage in commuting. Tr. 43-44. She testified that when she was unable to find another job she worked as a caretaker for her grandmother when she became ill and subsequently began experiencing health problems herself. *Id.* While

Ms. McDade may not have the most extensive work history the evidence does not support a finding that she had "little propensity" to work such that it undermines her testimony.

The ALJ also discounts Ms. McDade's testimony based on alleged inconsistent statements. Tr. 29. Substantial evidence does not support this finding. Specifically, the ALJ indicates that Ms. McDade gave differing reasons for stopping work. Tr. 29. The ALJ points out that in August 2014 Ms. McDade reported she stopped working because she "mentally snapped"[4], but also that a conflict with her employer over paying her mileage led to her termination. *Id.* The Court does not find this to be a meaningful inconsistency. It is unclear what Ms. McDade meant by "mentally snapped" and the ALJ did not inquire. It may be that the stress over the conflict with her employer caused her mental distress and contributed to her termination. Without further development substantial evidence does not support the ALJ's finding of inconsistency. The ALJ also states that Ms. McDade testified at the April 2015 hearing that she stopped working to care for her grandmother. Tr. 29. However, Ms. McDade's attorney, not the claimant herself, made that assertion in his opening statement to the ALJ and Ms. McDade clarified when asked that she had stopped working because she was terminated as described above and that she had subsequently started caring for her grandmother. Tr. 43-44. Again, the Court does not find this to be a meaningful inconsistency such that it undermines Ms. McDade's entire testimony.

The ALJ also notes that Ms. McDade alleged having headaches 3-4 days a week lasting 1-2 days but that "the medical evidence of record did not reflect headaches of this frequency or

---

[4] The ALJ also notes that there are "no mental health records" from the time that Ms. McDade claimed she "mentally snapped." Tr. 29. This also does not undermine Ms. McDade's testimony. Ms. McDade did not allege disability based on her mental status in 2003 and, as such, it is unclear why medical records would be required from that period of time. Furthermore, the ALJ did not ask what Ms. McDade meant in stating she "mentally snapped" and thus it is not clear whether mental health records for that period of time would be at all relevant.

ORDER ON SOCIAL SECURITY
DISABILITY - 14

duration." Tr. 29.  This was not a sufficient reason on its own to discount Ms. McDade's testimony.  The ALJ found migraines to be a severe impairment and thus he could not discount Ms. McDade's testimony solely because it was not fully supported by the medical evidence of record.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").  Furthermore, the record reflects that in January 2011, Ms. McDade reported having headaches 3-4 times a week with 2-3 being migraines, that she began having headaches on a daily basis when she started chemotherapy, and in October 2013 she reported using ibuprofen for headaches about 10 times per month.  Tr. 573, 1047, 1098.  The most recent treatment notes also indicate that Ms. McDade continued to use prescription medications for her migraines.  Tr. 1188, 1200, 1212.  Thus, substantial evidence does not support this reason for discounting Ms. McDade's testimony.

      The ALJ also notes that at the April 2015 hearing, Ms. McDade testified "she had 10 migraines a month, but admitted she had not had one in 2-3 weeks thanks to medication."  Tr. 29.  However, the ALJ misstates Ms. McDade's testimony.  She in fact testified that she *has* "gotten migraines like ten times in one month" but stated at that, at the time of the hearing, she hadn't had a migraine in maybe two and a half, three weeks.  Tr. 47.  She also stated separately that she took medication for her migraines but did not attribute the fact that she had not had a migraine for a few weeks to her medication which she appears to have been using for some time.  *Id.*  The Court finds no substantial or significant inconsistency in these statements.  The ALJ also notes that some providers noted Ms. McDade's depressive symptoms were situational, beginning when she was diagnosed with cancer but that Ms. McDade "attributes the onset of her depression to the

death of her mother and relationship issues prior to her mother's death" in 2013. Tr. 29. Again, the Court does not find this to be a substantial or significant inconsistency. The fact that Ms. McDade may attribute the source of her depression to other or additional causes than some of her providers does not substantially undermine her testimony. Unlike a broken limb or other traumatic physical injury the causes of a mental health impairment such as depression may be multiple or difficult to pinpoint. The Court does not find this to be a substantial inconsistency which undermines Ms. McDade's testimony.

Finally, the ALJ discounted Ms. McDade's testimony on the grounds that "at the hearing, [she] claimed there were additional/recent cancer treatment records from PMC, indicating she was still receiving treatment for cancer" but then stated "she was unable to obtain those records." Tr. 29. The ALJ finds this to be a "false" statement because Ms. McDade's cancer completely resolved and was in remission in February 2013. Tr. 29-30. The record does not appear to support this finding. Ms. McDade's attorney represented to the ALJ at the hearing that he was still waiting on medical evidence from Pacific Medical and requested an additional week to submit that evidence. Tr. 40-41. There is no indication in the transcript that a representation was made that the evidence related to continued cancer treatment and Ms. McDade herself acknowledged having completed chemotherapy and that she was in remission. Tr. 45-46. Moreover, Ms. McDade's attorney represents that he submitted the additional evidence following the hearing and the ALJ considered that evidence in rendering his decision. Dkt. 9 at 15; Tr. 1171-1283. The Commissioner, in response, does not dispute counsel's representation. Accordingly, substantial evidence does not support this reason for discounting Ms. McDade's testimony.

In sum, the ALJ erred in discounting Ms. McDade's testimony.[5] This error was harmful because Ms. McDade alleges greater limitations than the ALJ includes in the RFC or in the hypotheticals to the VE. On remand, the ALJ should reevaluate Ms. McDade's testimony.

## C.  Lay Opinion Evidence

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### *1. Jacqueline Lindsey*

Ms. Lindsey, Ms. McDade's cousin, submitted a Third Party Function Report in October 2013. Tr. 220-27. Ms. Lindsey identifies many of the same limitations Ms. McDade testified to. Ms. Lindsey stated that Ms. McDade took a long time to get ready in the morning, could not sit or stand for long periods of time, and was not driving at the time. *Id.* She indicated she helped Ms. McDade with housework, that Ms. McDade could make simple meals if she was feeling good but that otherwise her daughter cooked. *Id.* She stated that Ms. McDade might spend an hour working on light chores a couple times a week but that she sometimes needed assistance with those chores. *Id.*

In discounting Ms. Lindsey's statement the ALJ states that Ms. Lindsey "simply

---

[5] The Commissioner asserts several other reasons for discounting Ms. McDade's testimony including that she only received conservative treatment, unexplained or inadequately explained failure to follow a prescribed course of treatment, and the inconsistent opinions of reviewing doctors. Dkt. 10 at 4-8. However, although the ALJ mentions some of the evidence cited by the Commissioner in his opinion, he does not rely on that evidence as a basis for discounting Ms. McDade's testimony as the Commissioner suggests. As such, the Commissioner's arguments constitute post-hoc rationalizations which the Court cannot rely upon in order to affirm the ALJ's decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

reiterates" Ms. McDade's subjective allegations. Tr. 31. To the extent the ALJ intends to discount Ms. Lindsey's statements for the same reasons he discounted Ms. McDade's testimony, this reason fails. As noted above, the ALJ erred in evaluating Ms. McDade's testimony and the same insufficient reasons proffered to discount Ms. McDade's testimony are also not germane reasons for discounting Ms. Lindsey's testimony. *Cf. Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (Where an ALJ has provided clear and convincing reasons for finding a claimant not fully credible, those reasons are germane reasons for rejecting similar lay witness testimony.). The ALJ also states that some of Ms. Lindsey's statements "confirm certain abilities and activities by the claimant (e.g., ability to engage in basic activities of daily living, interact appropriately with others) which provides support for the residual functional capacity conclusion[.]" Tr. 31. The ALJ's reasoning here is rather unclear. To the extent the ALJ intends to discount Ms. Lindsey's statements as internally inconsistent he fails to, in fact, identify any specific inconsistencies. To the extent the ALJ intends to discount these statements as inconsistent with Ms. McDade's activities, as discussed in detail above, the basic activities cited by the ALJ are not sufficient to discount Ms. McDade's testimony nor do they undermine Ms. Lindsey's testimony.

The ALJ also discounts Ms. Lindsey's testimony noting she is not a medical professional and the limitations she alleged were not entirely consistent with the clinical observations of medical professionals. Tr. 31. The fact that Ms. Lindsey is not a medical professional is not a germane reason to discount her lay testimony. Furthermore, the ALJ fails to identify which medical professionals' clinical observations he finds inconsistent with Ms. Lindsey's statements. Moreover, as discussed above, the ALJ erred in evaluating some of the medical evidence which must be reevaluated on remand. As such, this also does not constitute a germane reason for

ORDER ON SOCIAL SECURITY
DISABILITY - 18

discounting Ms. Lindsey's statements. This error was not harmless as Ms. Lindsey testified to more severe limitations than the ALJ included in the RFC or in the hypothetical to the VE.

On remand, the ALJ should reevaluate Ms. Lindsey's lay statement.

### 2. *Kasha Martin*

Kasha Martin, Ms. McDade's daughter, also testified at the April 2015 hearing. Tr. 53-57. Ms. Martin reiterated much of Ms. McDade's testimony at the hearing. *Id.* Ms. Martin testified that she had to help Ms. McDade with every-day tasks around the house such as cooking, laundry and grocery shopping, that her mother mostly lay down during the day and had trouble getting around physically. *Id.* She testified that she had taken time off of school to help Ms. McDade due to her health issues and that her mother would "definitely not" be able to work full-time. *Id.*

The ALJ erred in failing to address Ms. Martin's testimony entirely. *See Nguyen*, 100 F.3d at 1467; *Dodrill*, 12 F.3d at 919. The Commissioner contends the error is harmless because Ms. Martin reiterated much of Ms. McDade's testimony which the ALJ discounted. Dkt. 10 at 18. However, as noted above, the ALJ erred in evaluating Ms. McDade's testimony and, as such, the same insufficient reasons proffered to discount Ms. McDade's testimony are also not germane reasons for discounting Ms. Lindsey's testimony. *Cf. Valentine*, 574 F.3d at 694. Ms. Martin also testified to more severe limitations than the ALJ included in the RFC or in the hypothetical to the VE. Accordingly, the ALJ's error in failing to address Ms. Martin's lay statement was not harmless. On remand, the ALJ should reevaluate Ms. Martin's statement.

### D. Scope of Remand

Ms. McDade requests that this matter be reversed and remanded for further administrative proceedings. Dkt. 9 at 1. In general, the Court has "discretion to remand for

further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court agrees that as there is conflicting medical evidence and not all essential factual issues have been resolved, that remand for further administrative proceedings is appropriate. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate.").

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. Patel's opinion, the non-examining doctor's opinions, Ms. McDade's testimony, and the lay witness statements. Upon reevaluating the evidence, the ALJ should also reassess and re-determine the RFC and proceed with steps four and five of the sequential review process with the assistance of VE testimony as necessary.

DATED this 20 day of November 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE